UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Criminal Action No. 24-cr-10106-ADB |
| JOSEPH KERRISSEY, III, | * |
| Defendant. | * |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

    Currently before the Court is Defendant Joseph Bernard Kerrissey III's ("Kerrissey's") motion to suppress evidence obtained during a search of his residence pursuant to a search warrant. [ECF No. 69]. For the reasons set forth below, the motion is **DENIED**.

I.  BACKGROUND

The government initiated this wire-fraud case by sealed criminal complaint on April 5, 2024. [ECF No. 1]. That same day, U.S. Postal Inspector Ryan T. Noonan applied for a warrant to search the property located at 20 Sunrise Avenue in Plymouth, Massachusetts. See [ECF No. 69-1]. Noonan's affidavit, which was attached to the search warrant application, [ECF No. 69-2], stated that he had probable cause to believe that Kerrissey "submitted six fraudulent Paycheck Protection Program ("PPP") loan applications on behalf of three different companies that [he] owned or controlled," thereby violating 18 U.S.C. § 1343. [Id. ¶¶ 3–4]. The allegedly fraudulent applications were submitted between April 2020 and April 2021. [Id. ¶ 27].

In his affidavit, as relevant here, Noonan also attested that he had probable cause to believe that the property to be searched contained "fruits, evidence, and instrumentalities" of those offenses. [ECF No. 69-2 ¶ 81]. Specifically, the affidavit noted that Kerrissey had listed the property as his personal address and as the business address for all three companies, [id. ¶ 82]; the property was connected to the IP address from which multiple of the fraudulent PPP loan applications were submitted, [id. ¶ 83]; bank accounts that received funds for the PPP loans to the three companies were opened with the property listed as the address for the companies, [id. ¶ 84]; an address verification listed Kerrissey as receiving mail at the property, [id. ¶ 85]; and Noonan had on March 21, 2024, visited the property and identified Kerrissey as the person living there, [id. ¶ 86].

As specified in Attachment B to the affidavit, the government sought "[a]ll records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. [§] 1343, dating from April 2020 until the present," including enumerated categories of records pertaining to Kerrissey and the three companies. [ECF No. 69-

3 at 1–3]. The government also sought "[a]ll computer hardware, computer software, and storage media reasonably believed to belong to [Kerrissey] or Buckman," Kerrissey's partner, but the government noted that the off-site searching of the electronics would be subject to the same temporal and subject-matter limitations as the other records sought to be seized. [Id. at 3]; see also [ECF No. 69-2 ¶ 9].

Magistrate Judge Bowler signed the search warrant on April 5, 2024, [ECF No. 69-1 at 1], and the warrant was executed four days later, on April 9, 2024, [ECF No. 69-4]. On April 25, 2024, a federal grand jury returned an indictment charging Kerrissey with three counts of wire fraud in violation of 18 U.S.C. § 1343. [ECF No. 17]. On October 30, 2025, Kerrissey filed the instant motion to suppress, [ECF No. 69], which the government opposed on November 13, 2025, [ECF No. 70].

## II. DISCUSSION

Kerrissey makes two arguments for suppression. First, he argues that the affidavit failed to establish "a timely and particularized nexus" between the alleged PPP-loan offenses and the property searched because the affidavit offered no basis to believe that digital records or proceeds of the alleged 2020–2021 PPP-loan scheme remained at the property in 2024. [ECF No. 69 at 6–7]. Second, he argues that the attachment describing the items to be seized was overbroad and violated the Fourth Amendment's particularity requirement. [ECF No. 69 at 7–8].

### A. Nexus

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." United States v. Rodrigue, 560 F.3d 29, 32–33 (1st Cir. 2009) (quoting United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005)). "In determining whether probable cause is established in the affidavit, the magistrate

3

(and the reviewing court) is required to make a practical, common-sense decision whether, given all the circumstances, there is a fair probability that contraband or evidence will be found in the place described." United States v. White, 766 F.2d 22, 25 (1st Cir. 1985) (first citing Illinois v. Gates, 462 U.S. 213 (1983); and then citing United States v. Drake, 673 F.2d 15, 18 (1st Cir. 1982)); see also United States v. Faust, 853 F.3d 39, 46 (1st Cir. 2017) ("To satisfy the nexus element, the warrant application 'must give someone of "reasonable caution" reason to believe that evidence of a crime will be found at the place to be searched.'" (quoting Ribeiro, 397 F.3d at 49)).  A "nexus . . . need not, and often will not, rest on direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].'" United States v. Roman, 942 F.3d 43, 51 (1st Cir. 2019) (quoting United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999)).  Courts "consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises."  United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011) (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)). "A magistrate's 'determination of probable cause should be paid great deference.'"  Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).  A reviewing court's "duty is simply to ensure that the magistrate [judge] had a substantial basis for . . . conclud[ing] that probable cause existed."  United States v. Bregu, 948 F.3d 408, 417 (1st Cir. 2020) (citation modified).

      Here, the magistrate judge had a substantial basis for concluding that probable cause existed to believe that evidence of the alleged wire fraud would be found at the property. Specifically, the affidavit contained information linking Kerrissey's three businesses to the property, including the use of the property as a business address for the businesses and the

submission of PPP loan applications from the property. [ECF No. 69-2 ¶¶ 82–86]. To be sure, a considerable amount of time had passed between Kerrissey's alleged submission of the loan applications in 2020–2021 and the warrant application in 2024. But assessing the staleness of an affidavit is not a matter of "counting the number of days between the events described in the affidavit and a warrant's issuance, as a merchant would beads on an abacus," Tiem Trinh, 665 F.3d at 13; rather, the Court considers "various factors, including 'the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information' in assessing the information's ripeness," id. (quoting United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008)). The warrant here "primarily sought business records," which, as "repositories of historical facts . . . are largely immune from claims of staleness." United States v. Floyd, 740 F.3d 22, 34 (1st Cir. 2014). Based on the totality of the information contained in the affidavit, there was probable cause to believe that the enumerated evidence of the alleged wire fraud would be found at Kerrissey's residence, even several years after the submission of the allegedly fraudulent loan applications.

### B. Particularity

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement demands that a valid warrant: (1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized." United States v. Lindsey, 3 F.4th 32, 40 (1st Cir. 2021) (quoting United States v. Kuc, 737 F.3d 129, 133 (1st

Cir. 2013)). The purpose of this requirement "is to prevent wide-ranging general searches by the police." Id. (quoting United States v. Moss, 936 F.3d 52, 58 (1st Cir. 2019)).

The warrant here, and, specifically, the attachment describing the items to be seized, satisfied the Fourth Amendment's particularity requirement. Kerrissey argues, first, that the attachment was overbroad because it authorized the seizure of "'all records, in whatever form' for multiple businesses without any temporal limitation." [ECF No. 69 at 7]. This argument ignores the plain language of the warrant, which limited the records to be seized to violations of a certain statute during a defined time period, that is "evidence, fruits, or instrumentalities of violations of 18 U.S.C. [§] 1343" from "April 2020 until the present." [ECF No. 69-3 at 1–3]. Contrary to Kerrissey's argument, the Court must read this "broad first clause, which identifie[d] the criminal offense[] that the target evidence was expected to establish" in light of the more "detailed and particularized" subclauses that follow, whose particularity Kerrissey does not specifically challenge. Kuc, 737 F.3d at 133; see also United States v. Falon, 959 F.2d 1143, 1148 (1st Cir. 1992) (noting that "when an individual's allegedly fraudulent business activities are centered in his home . . . the broad categories of items that may be seized . . . must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent, personal materials"); United States v. Klyushin, 643 F. Supp. 3d 261, 270 (D. Mass. 2022) (collecting decisions upholding warrants of similar structure against particularity challenges).

Kerrissey also takes issue with the attachment's authorization to seize "all computer hardware, computer software, and storage media reasonably believed to belong to Kerrissey or Buckman," calling this a "boundless grant of authority." [ECF No. 69 at 8]. This argument, however, ignores the very next sentence of the attachment, which subjects the off-site searching of these items to the same temporal and subject-matter limitations as the searches of the other

6

items. [ECF No. 69-3 at 3]; see also Kuc, 737 F.3d at 133 ("[A] warrant's language must be read in context."); Klyushin, 643 F. Supp. 3d at 270 (upholding warrants that "directed Apple to broadly turn over to the government an iCloud account" but "only authorized the government to search for specific categories of information from that seized account"). Kerrissey's argument that the warrant was overbroad fails.

### C. Good Faith Exception

Even when a search warrant is defective, the Supreme Court has held that suppression is not required if law enforcement "acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984). "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id. at 922. The government bears the burden of demonstrating the affiant's good faith. See United States v. Vigeant, 176 F.3d 565, 572 (1st Cir. 1999).

Kerrissey argues that the good-faith exception does not apply because the warrant's "staleness" and "sweeping overbreadth" were evident on its face. [ECF No. 69 at 8]. The government counters that "[t]he agents provided a detailed affidavit to a magistrate judge, the warrant included subject matter and temporal limitations on what could be searched, and the agents acted in accordance with the parameters of the warrant issued." [ECF No. 70 at 7].

The Court agrees with the government. Even if the magistrate judge's finding of probable cause had been improper, the affidavit supporting the warrant, which provided robust grounds to believe that evidence of the offense would be found at the property, was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). Similarly, even if the warrant had been overbroad, it was not

7

"so facially deficient . . . in failing to particularize . . . the things to be seized . . . that the executing officers [could not] reasonably presume it to be valid." Id.; cf. Groh v. Ramirez, 540 U.S. 551, 557 (2005) (finding warrant "plainly invalid . . . 'because it provided no description of the type of evidence sought'"). Accordingly, even assuming that the warrant violated the Fourth Amendment, the officers' reliance on it was objectively reasonable.

### III. CONCLUSION

For the reasons set forth above, Kerrissey's motion to suppress evidence from the search of 20 Sunrise Avenue in Plymouth, Massachusetts, [ECF No. 69], is **DENIED**.

**SO ORDERED.**

November 20, 2025                                                  */s/ Allison D. Burroughs*
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE